IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANTHONY CORTESS KIMBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23-00105-CV-W-GAF-SSA |
| ) | |
| MARTIN J. O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Presently before the Court is Plaintiff Anthony Cortess Kimber's ("Plaintiff") Social Security Brief, requesting this Court reverse the Administrative decision that Plaintiff was not under a disability as defined under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et seq*. (Doc. 11). Defendant Martin J. O'Malley, Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), opposes. (Doc. 14). Plaintiff has also filed a reply brief. (Doc. 15). For the reasons stated below, the Commissioner's decision is AFFIRMED in part, REVERSED in part, and REMANDED.

## DISCUSSION

**I.      FACTS**

On July 24, 2019, Plaintiff filed applications for child's insurance benefits under Title II of the Act and for supplemental security income under Title XVI of the Act. (Administrative Court Transcript ("Tr.") 12). In both applications, Plaintiff alleged disability beginning December 1, 2015, which he later amended to July 9, 2019. (*Id.*). Due to the amended onset date, Plaintiff's application for child's insurance benefits was withdrawn and only the Title XVI claim remained.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit.

1

(*Id.* at 12-13). Plaintiff's application was initially denied on December 20, 2019. (*Id.* at 12). Following a hearing, an administrative law judge ("ALJ") concluded that Plaintiff was not under a "disability" as defined in the Act on November 4, 2020. (*Id.* at 23).

Thereafter, Plaintiff sought review of the ALJ's decision by the Appeals Council. (*Id.* at 7). The Appeals Council denied his request for review, and Plaintiff appealed to this Court. (*Id.* at 1, 1141-44; *see also* Case No. 21-00406-CV-W-GAF-SSA). Upon Defendant's request, this Court reversed the ALJ's decision and remanded the matter to Defendant for further evaluation of Plaintiff's claim. (Tr. 1145-46).

On remand, a second ALJ concluded that Plaintiff was not under a disability following a hearing. (*Id.* at 1078-79). In this decision, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, status post gunshot wound to the face, partial missing left index finger, and schizophrenia. (*Id.* at 1067). The ALJ concluded Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 1068). The ALJ determined Plaintiff retained the residual functional capacity (the "RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> He can never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid occupations that require telephone communications or more than frequent verbal communication. [He] should avoid operational control of moving machinery, unprotected heights, and hazardous machinery. He should avoid extreme cold weather, wet weather conditions, and extreme heat. [Plaintiff] can frequently handle and finger with the left upper extremity. [He] has no limitations with his right dominant upper extremity. [He] has the ability to understand, remember and carry out simple, routine, and repetitive steps, tasks, or instructions. He has the ability concentrate, persist, and remain on task and pace to perform simple, routine, and repetitive tasks, which may involve multiple non-complex simple, routine, and repetitive steps, tasks, or instructions. [Plaintiff] can concentrate, persist, and remain on task and pace to adapt to work in an environment that involves only simple, work-related decisions with no more than occasional workplace changes. [He] should have no public interaction, but he can work around coworkers with only occasional interaction with coworkers and supervisors.

(*Id.* at 1069-70). With the assistance of vocational expert ("VE") testimony, the ALJ concluded that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy including cleaner, sorter, and assembler. (*Id.* at 1077-78). Consequently, the ALJ found that Plaintiff was not disabled. (*Id.* at 1078-79).

In cases remanded by a federal court, the ALJ's decision becomes the final decision, unless the Appeals Council assumes jurisdiction or the claimant files exceptions to the decision with the Appeals Council. 20 C.F.R. §§ 404.983, 404.984. Neither being present in this case, the ALJ's December 9, 2022 decision stands as the "final decision" of the Commissioner, subject to judicial review on appeal herein.

## II. LEGAL STANDARD

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by "substantial evidence on the record as a whole." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017).

A reviewing court should disturb an ALJ's decision only if it falls outside the available "zone of choice," and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse,

even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome"). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Ash v. Colvin*, 812 F.3d 686, 689-90 (8th Cir. 2016) (quotation omitted). The Eighth Circuit has repeatedly held that a court should "'defer heavily to the findings and conclusions of the Social Security Administration.'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)). Indeed, the Supreme Court has stated that an ALJ's factual findings "are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek*, 587 U.S. at 99.

## III. ANALYSIS[2]

To establish entitlement to benefits, Plaintiff must show he is unable to engage in any substantial gainful activity due to a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). Plaintiff implicitly contends he met this burden by arguing (a) the ALJ's RFC findings—both mental and physical—are not supported by substantial evidence, (b) the ALJ erred at Step Five, and (c) the ALJ should have considered a closed period for benefits. (Doc. 11, pp. 25-41). The Court concludes Plaintiff has not met his burden to establish entitlement to ongoing benefits but finds the ALJ did not properly consider the possibility of a closed period for benefits.

### A. RFC Findings

The RFC is the most an individual can do despite the combined effect of all his credible limitations. 20 C.F.R. § 416.945. The RFC is based on all relevant evidence in the record and is

---

[2] Upon review of the record and the law, Defendant's position is found to be persuasive. Much of Defendant's brief is adopted without quotation designated.

assessed at Step 4 of the sequential evaluation. *Id*. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019); 20 C.F.R. § 416.945(a)(3). But it is an ALJ's responsibility to determine the RFC based on all relevant evidence, including opinion evidence, medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); SSR 96-8p, 1996 WL 374184, at *5.

　　1.　　**Mental RFC**

Plaintiff first argues the ALJ's mental RFC finding is flawed because the ALJ did not parrot the assessed limitations of the consulting expert's opinion that the ALJ found persuasive or explain why he rejected one portion (i.e., the ability to understand, remember, and carry out only two-step commands) of that opinion. (Doc. 11, pp. 25-28). Plaintiff also argues the ALJ overstated Plaintiff's daily activities and failed to explain how his activities were inconsistent with the two-step command limitation opined by the consulting expert, Dr. James Morgan. (*Id.* at pp. 29-32). Plaintiff's arguments are not consistent with controlling law and/or are belied by the opinion itself and substantial evidence supports the ALJ's mental RFC finding.

First, there is no requirement that an RFC finding must be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, ALJs are required to assess the persuasiveness of medical opinions at the source-level, considering whether the opinions are supported by and consistent with the record and other factors. 20 C.F.R. § 416.920c(b)-(c). "[T]he ALJ is free to accept some, but not all, of a medical opinion" and "is not required to explicitly reconcile every conflicting shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (citations omitted) (cleaned up). And the ALJ is solely responsible for assessing the RFC. 20 C.F.R. § 4163946(c). Thus, the ALJ was not required to adopt verbatim any particular medical opinion, including ones found persuasive.

5

Nor was the ALJ required to include all portions of a medical source's opinions, even when the medical source's opinions are generally persuasive. *See Austin*, 52 F.4th at 729 ("ALJ is free to accept some, but not all, of a medical opinion."). Although the ALJ found most of Dr. Morgan's opinions persuasive, the ALJ declined to adopt his opinion that Plaintiff was limited to two-step commands. (Tr. 1076). Consistent with the regulations and SSR 96-8p, the ALJ explained why she did not adopt this particular opinion: the ALJ explained that Plaintiff's "memory is generally intact, he has not complained of difficulty understanding instructions from his medical providers, and his judgment is typically rated to be fair to good. Moreover, as noted above, [Plaintiff] engages in activities of daily living that involve more than two-steps, including, but not limited to, caring for his baby." (*Id.*) (citing Tr. 249-85, 376, 405, 423, 433, 446, 658, 681, 686, 1052-53, 1057, 1281-88, 1461-63, 1485-90, 1506, 1538-41, 1585-94, 1603-06, 1611-14, 1619-22).

Contrary to Plaintiff's contention, the ALJ's explanation is supported by substantial evidence in the record. (*Id.*). Common sense tells us generally intact memory, the ability to understand instructions, and good judgment relate to the ability to perform two-step commands. Plaintiff's argument to the contrary is nonsensical. (Doc. 11, pp. 27-28). Further, substantial evidence supports the ALJ's summary of Plaintiff's daily activities. While Plaintiff complains that the ALJ took a selective reading of the record, Plaintiff only cites his self-serving testimony to support his position. (*Id.* at p. 29). The decision demonstrates the ALJ considered Plaintiff's testimony that he required assistance from his mother and caregiver to perform some activities of daily living along with a bevy of treatment notes covering the span of the relevant period. (Tr. 1073-75). And the ALJ appropriately noted that Plaintiff's search for work during the relevant period conflicted with Dr. Morgan's opinion regarding two-step commands. (Tr. 1046, 1058-59, 1075). Although substantial evidence certainly exists to support a more restrictive mental RFC, the Court cannot say the ALJ's finding was not within the zone of choice. *Buckner*, 646 F.3d at

6

556. Because substantial evidence supports the ALJ's mental RFC, the Court must "defer heavily" to the ALJ's findings and conclusions and affirm. *Wright*, 789 F.3d at 852.

### 2. *Physical RFC*

Plaintiff next argues the ALJ's RFC determination is fatally flawed because it did not adopt any of the various opinions or findings regarding his physical RFC. (Doc. 11, pp. 32- 35). As discussed above, the regulations do not require the ALJ to adopt the opinion of any medical provider. *See* 20 C.F.R. § 416.946(c); *see also Austin*, 52 F.4th at 729. Indeed, there is no requirement that the ALJ structure her RFC finding on medical opinions at all. *See Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) ("While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC."); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (same). Instead, some medical <u>evidence</u> must support the RFC. *Hensley*, 829 F.3d at 932. Under the regulations, there are several types of "medical evidence" beyond medical opinions—including medical signs, laboratory findings, medical history, clinical findings, diagnosis, treatment notes, and prescribed medical treatment with response—that may be considered. 20 C.F.R. § 416.913(a). Here, the ALJ cited objective medical evidence, treatment notes, treatment history, imaging, and clinical findings when addressing Plaintiff's physical RFC. (Tr. 1071-73). Thus, medical evidence does support the physical RFC.

Next, Plaintiff implies that every medical source in the record found he was more limited than the ALJ's RFC. (Doc. 11, pp. 32- 35) (*citing Noerper v. Saul*, 964 F.3d 738, 746-747 (8th Cir. 2020)). But that is not the case. At least three medical consultants—Dr. Paul Ross, Dr. Denise R. Trowbridge, and Dr. Keith Polston—found Plaintiff had fewer limitations than the ALJ did.

7

First, Dr. Ross opined that Plaintiff had no physical limitations. (Tr. 1149). The ALJ found this opinion unpersuasive because Dr. Ross did not have the ability to consider some additional objective evidence. (Tr. 1076). Further, Dr. Trowbridge reviewed the claimant's file on December 18, 2019, and found Plaintiff had no exertional limitations, but he could not climb ladders, ropes, or scaffolds, was limited to frequent speaking due to the gunshot wound to his face, and should avoid even moderate exposure to hazards. (Tr. 97-100, 1076). Dr. Polston opined that Plaintiff had no limitations in sitting, standing, or ambulating and had no impairment in communication. (Tr. 1076, 1549-56). The ALJ found both opinions unpersuasive because she concluded that Plaintiff had even greater physical limitations. (Tr. 1076). The ALJ observed that additional objective evidence available only at the hearing level and Plaintiff's hearing testimony supported a more restrictive RFC, including limitations of Plaintiff's ability to handle and finger with his left arm and hand. (Tr. 1069, 1076). Here, unlike *Noerper* and other cases cited by Plaintiff, the ALJ afforded Plaintiff the benefit of the doubt and found he had greater limitations than described by the medical sources in the record.

"Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quotation omitted). The ALJ's discussion demonstrates she properly discharged her duty by considering the entire record when formulating the physical RFC and did not use her own medical expertise.

**B.      Step Five Analysis**

At Step 5, the burden shifts to the Commissioner to prove that a claimant retains the RFC to perform work that exists in significant numbers in the national economy. *Boyd v. Colvin*, 831 F.3d 1015, 1021 (8th Cir. 2016); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). An ALJ may rely on a VE's response to a properly formulated hypothetical question to satisfy the

Commissioner's burden.  *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004).  Plaintiff argues the Commissioner has not met his burden because (a) the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ did not resolve the conflicts; (b) the VE's testimony does not constitute substantial evidence because the hypothetical posed mirrored the flawed RFC; and (c) two of the three cited jobs (sorter and assembler) require more than two-step commands.  (Doc. 11, pp. 37-41).

The Court can quickly dispense of Plaintiff's last two arguments.  As noted above, the RFC finding is supported by substantial evidence and, therefore, the hypothetical was not improper.  *See Kraus v. Saul*, 988 F.3d 1019, 1027 (8th Cir. 2021) (stating VE's testimony constitutes substantial evidence if it is in response to a hypothetical mirroring an RFC finding supported by substantial evidence).  And so long as work exists in significant numbers in the national economy in one or more of the cited occupations, substantial evidence supports the disability finding.  *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (one mistaken recommended job does not devalue the rest of the opinion).  The VE testified that there were approximately 200,000 positions nationwide for the job of cleaner.  (Tr. 1109).  Thus, even if the jobs of sorter and assembler were excluded, work as a cleaner existed in significant numbers in the national economy in at least one of the cited occupations.

Turning to Plaintiff's first argument, Plaintiff is correct that VE testimony that conflicts with a DOT listing's job requirements does not constitute substantial evidence to deny benefits unless the ALJ resolves the conflict.  *Galloway v. Kijakazi*, 46 F.4th 686, 689 (8th Cir. 2022) (quoting *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018)).  A VE's testimony must not be "based on underlying assumptions or definitions that are inconsistent with [the Commissioner's] regulatory policies or definitions."  SSR 00-4p, 2000 WL 1898704, at *3. If a conflict exists between the VE's testimony and information in the DOT, the ALJ must ask the

9

VE to reconcile the conflict. *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p).

Plaintiff argues that the VE's testimony conflicts with each specified job for different reasons and the ALJ did not recognize, nor resolve, said conflicts. During the hearing, the VE testified that her testimony was consistent with the DOT and its supplement and that, for testimony on areas not addressed by the DOT or its supplement, her testimony was based on a combination of her training and experience. (Tr. 1113). The VE stated that the supplemented areas included contact with others, including coworkers and supervisors; handling and fingering on the non-dominant extremity; absences; rest breaks; and intermittent and unpredictable ability to interact with coworkers or supervisors. (*Id.*).

Plaintiff asserts that the VE's testimony conflicts with the identified job of cleaner (DOT 323.687-014) because the DOT lists as a duty "renders personal assistance to patrons" even though Plaintiff was limited to no interaction with the public. (Doc. 11, p. 38). Judges have found that "renders assistance to patrons" is not incompatible with a limitation to no interaction with the public. *See Watson v. Kijakazi*, No. 4:20-CV-1144 PLC, 2023 WL 1815670, at *10 (E.D. Mo. Feb. 8, 2023) ("[I]t is not clear that rendering 'personal assistance to patrons' requires face-to-face interaction between the employee and the clients."); *Robeson v. Colvin*, No. 13-3109-CV-S-ODS-SSA, 2014 WL 353283, at *2 (W.D. Mo. Jan. 30, 2014) ("[T]here can be a subset of housekeeping jobs that require no personal assistance to patrons.") (citing *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)). But even if there is a conflict between the VE's testimony and the DOT, the other jobs would remain available and satisfy the Commissioner's burden at Step 5.

Plaintiff also contends the VE's testimony conflicts with the DOT's job descriptions for cleaner (DOT 323.687-014) and assembler (DOT 706.684-022) because the ALJ limited Plaintiff to only occasionally interacting with supervisors, but the job descriptions require the employee to

10

be able to work under specific instructions—i.e., under direct and concrete supervision. (Doc. 11, pp. 38-39). Plaintiff's argument is without merit. The DOT descriptions provide that "taking instructions" is "not significant" in the jobs and do not state that direct and concrete supervision is necessary. DOT 323.687-014; DOT 706.684-022. Further, the Court has rejected Plaintiff's line of argument, noting that work under specific instructions can refer to written oral instructions. *See Vansel v. Saul*, No. 4:19-CV-00777-DGK, 2020 WL 6930109, at * 3 (W.D. Mo. Nov. 4, 2020).

Plaintiff also asserts his RFC precludes the work of an assembler (DOT 706.684-022) because he is limited to occasional interaction with coworkers. (Doc. 11, p. 38). Again, the DOT and its companion publication, the Selected Characteristics of Occupations ("SCO"), provide that taking instructions and/or helping people are "not significant" and does not require talking. DOT 706.684-022. Thus, Plaintiff's selective quotation of the DOT does not demonstrate a conflict between the DOT and the VE's testimony.

Plaintiff additionally contends that his RFC precludes him from performing the job of sorter/classifier (DOT 361.687-014). (Doc. 11, p. 39). The RFC precludes exposure to extreme cold weather, wet weather conditions, and extreme heat. (Tr. 1069). The DOT description provides that the job of sorter/classifier involves frequent exposure to "wet and/or humid" conditions but does not involve exposure to weather. DOT 361.687-014. The Program Operations Manual System ("POMS") defines "wet or humid" as "an environmental factor rated in the SCO meaning contact with water or other liquids or exposure to nonweather-related humid conditions." POMS DI 25001.001(A)(92). Because the RFC precludes exposure to "wet weather conditions" and the job of sorter/classifier does not involve exposure to weather but instead involves nonweather humid conditions or water or other liquids, there is no conflict between the DOT and the VE's testimony.

11

Lastly, Plaintiff argues the RFC limitation to occasional workplace changes precludes jobs requiring level 2 reasoning, including the jobs of sorter/classifier (DOT 361.687-014) and assembler (DOT 706.684-022). (Doc. 11, pp. 39-40). Beyond his bare assertions, Plaintiff cites no authority for this proposition nor explains how occasional workplace changes conflicts with level 2 reasoning. (*Id.*). Thus, Plaintiff has not shown an inconsistency between the VE's testimony and the DOT job descriptions.

The Court recognizes that testimony that the VE's position is vaguely supported by training and experience is not a sufficient explanation for conflicts between the VE's testimony and the DOT. *See Stanton*, 899 F.3d at 560. However, as determined *supra*, Plaintiff has failed to identify any legitimate conflicts between the VE's testimony and the DOT. As such, the VE's testimony constitutes substantial evidence, and the ALJ was permitted to rely on that testimony at Step 5.

**C.     Closed Period of Benefits**

Under 20 C.F.R. § 404.316, the Commissioner can award disability benefits either on a continuing basis or for a closed period. Plaintiff argues he should have at least been awarded benefits from his alleged onset date of July 9, 2019 until December 22, 2020 or October 14, 2021, while his was recovering from a gunshot wound to the face and surgeries addressing the resulting injuries. (Doc. 11, pp. 35-37).

While the ALJ outlined Plaintiff's course of treatment for the gunshot wound, she never discussed the possibility of a closed period for disability benefits. (Tr. 1064-79). The ALJ correctly observed that, by April 30, 2020, Plaintiff was progressing well and could resume a completely normal diet. (Tr. 750, 1072). However, the ALJ incorrectly stated that Plaintiff "could resume [] completely normal . . . activity." (Tr. 1072). The treatment notes from the April 30, 2020 appointment state that Plaintiff could "<u>start to</u> resume complete normal activity" but was "strongly encouraged" to avoid any activity that would involve contact with his face. (Tr. 750).

12

The doctor further stated that the bone graft would not be consolidated for at least another four months. (*Id.*). It was not until December 3, 2020 that his doctor found him "stable," released him from care, and stated he "can now resume normal activities." (Tr. 1414).

Defendant implicitly concedes that Plaintiff would have qualified for disability benefits while he was recovering from the gunshot wound and reconstructive surgeries had it met the duration requirement. (Doc. 14, p. 12). If Plaintiff was able to immediately resume normal activity on April 30, 2020, as Defendant argues, then the duration requirement of 12 months would not have been met. However, there is not substantial evidence to support that Plaintiff could immediately resume normal activity on that date or on or before July 8, 2020. The treatment notes indicate that he was to gradually resume normal activity over the next four months as his bone graft fully healed. (Tr. 750). But he was not fully cleared until December 2020 to resume normal activities, which was over 16 months after his alleged onset date. (Tr. 1414). If substantial evidence exists that Plaintiff actually resumed normal activities on or before July 8, 2020, then he likely is not entitled to disability benefits. But, as the record stands, substantial evidence does not exist for such a finding. As such, the question of whether Plaintiff is entitled to Title XVI benefits for a closed period must be remanded for further consideration.

## **CONCLUSION**

Substantial evidence supports the ALJ's decision that Plaintiff is not entitled to ongoing benefits. However, the ALJ failed to consider whether Plaintiff was eligible for a closed period of benefits. For these reasons and the reasons set forth above, the Commissioner's decision is AFFIRMED in part, REVERSED in part, and REMANDED for reconsideration in accordance with this decision.

**IT IS SO ORDERED.**

                                                      / Gary A. Fenner  
                                        GARY A. FENNER, JUDGE  
                                        UNITED STATES DISTRICT COURT

DATED: July 12, 2024